# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

REGGIE PATTERSON
ADC # 114360                                                                                                                                           PLAINTIFF

V.                                  2:09-cv-00019-BSM-JJV

CORRECTIONAL MEDICAL
SERVICES, *et al.*                                                                                                           DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

      1.       Why the record made before the Magistrate Judge is inadequate.

      2.      Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

      3.      The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite A149
    Little Rock, AR 72201-3325

## DISPOSITION

### I. PROCEDURAL HISTORY

Plaintiff, an inmate of the Arkansas Department of Correction (ADC) at the East Arkansas Regional Unit, filed this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical need. Plaintiff alleges that medical personnel failed to provide him with adequate medical care for Graves' disease. Plaintiff further alleges prison officials made him attend school and this activity exceeded his medically-restricted limitations.

Plaintiff made a timely demand for a jury trial; however, before expending the resources inherent in such a trial, the Court held a pre-jury evidentiary hearing to determine whether this case should proceed to a jury trial. At the hearing was held March 4, 2010,

Plaintiff testified and introduced into evidence a written statement (Pl's Ex. 1) he had prepared, which included a motion to dismiss Defendants Moore and Norris, and substitute instead Deputy Director Wendy Kelley, and a motion to withdraw his previous request for a jury trial. After carefully considering the evidence and Plaintiff's testimony, the Court makes the following recommendations:

## II.     PLAINTIFF'S MOTION TO DISMISS AND REQUEST FOR COURT TRIAL

During the course of the proceedings Plaintiff introduced into evidence a written statement (Pl's Ex. 1) whereby he moved to dismiss his claims against Defendant Moore, a medical grievance officer employed by Correctional Medical Services, and Defendant Larry Norris, director of the ADC. He seeks instead to add as a Defendant Wendy Kelley, and requests a court trial rather than a jury trial. Accordingly, the undersigned recommends that Plaintiff's request be granted in part, and Defendants Moore and Norris be dismissed as party defendants. Plaintiff did not, however, offer any facts in support of claims against Wendy Kelley; therefore, the Court recommends this request be denied. As for Plaintiff's request for a bench trial of his claims, the Court recommends this motion be denied as moot based on his failure to state a claim for relief.

## III.    FACTS

Plaintiff was diagnosed with Graves' disease shortly after his commitment to the Arkansas Department of Correction. Graves' disease is a form of hyperthyroidism, resulting in an overproduction of the hormone thyroxine which causes a variety of symptoms. Plaintiff stated in his complaint that his symptoms include: "nervousness, irritability, sensitivity to

heat, increased perspiration, skin problems, brittle hair, shakiness, weight loss ..., increased heart rate, palpitations, irregular heart rhythm, elevated blood pressure, insomnia, confusion, an increase in bowel movement, weakened muscles in the upper arms and thighs...." (Doc. No. 2).  As noted at the prejury hearing, Plaintiff also suffers from Graves' ophthalmopathy, which occurs when tissues and muscles behind the eyes swell and cause the eyeballs to move forward and bulge out past the protective orbit.  Light sensitivity and dry eyes are common side effects of this condition.[1]

Plaintiff's condition was diagnosed by Dr. Arnold (not a defendant) at the Diagnostic Unit of the Arkansas Department of Correction.  Plaintiff testified that Dr. Arnold first raised the prospect of radioactive iodine treatment, but Plaintiff did not receive radioiodine I-131 until 2009. Plaintiff submits this delay caused him unnecessary "suffering."  Additionally, Plaintiff wants a second round of radioiodine therapy to relieve his symptoms.

Medical records show Plaintiff first saw Dr. Hughes in April of 2008 (Def's Ex. 1). Dr. Hughes ordered lab work for a "thyroid panel with TSH" on April 23 and May 28, 2008. In the Condensed Health Services Encounter form prepared April 29, 2008, Dr. Hughes noted: "PTU Inderal, repeat thyroid panel in one month.  Consider I-131 incl in diet."  PTU Inderal refers to the treatment combination of propranolol and propylthiouracil ("PTU"), which blocks the production of thyroid hormone and is used in lieu of surgery.  Medical records document this treatment began sometime prior to July 21, 2008[2], (Def's Ex. 2),

---

[1] This medical information is from the entry on Graves' disease at www.mayoclinic.com.

[2] Possibly as early as February 19, 2007

4

although he may have been receiving some treatment prior to this date because Plaintiff reported to Dr. Hughes that his prescription was discontinued in or around October, 2007.

Dr. Hughes saw Plaintiff as a chronic care patient every three months: April 29, 2008; July 21, 2008; October 20, 2008; and January 14, 2009.  On other occasions, Plaintiff was seen by APN Jerre Douglas.  Medical Services continued monitoring his thyroid levels with blood tests.  In February of 2009 Dr. Hughes obtained approval for Radioiodine I-131 treatment.  Clinical notes (Def's Ex. 2) indicate the "uptake and scan" – typically to confirm the cause of the hyperthyroidism and plan treatment – was completed on February 13, 2009, and the actual treatment was done at St. Vincent's hospital in Little Rock on March 13, 2009.[3]

Radioactive iodine is a common treatment for Graves' disease, according to the Columbia University Medical Center, but it is not without risks.  The treatment involves the ingestion of a radioactive iodine tablet which works to destroy the overactive thyroid cells so that the thyroid can shrink in size and produce hormone at normal levels.  Treatment precautions require the patient be kept in isolation for approximately three days afterwards.  Even personal items can be contaminated by radioactivity in the days following ingestion.  The thyroid gland is essentially destroyed by the radioactivity; most patients then experience hypothyroidism and take hormone medication for the rest of their lives.  *See* http://www.cumc.columbia.edu/dept/thyroid/raiprep.html.

---

[3] Plaintiff's complaint (Doc. No. 2) was received for filing on February 13, 2009. Defendants were served with notice of the complaint on March 23, 2009 and April 7, 2009 (Doc. Nos. 5-9), after the RAI treatment had been completed. Plaintiff suggested he began to receive treatment only after he filed this lawsuit, but the time line suggests otherwise.

Plaintiff's lab tests in the months following the I-131 treatment showed progress with reduced levels of Thyroid Stimulating Hormone (TSH), and Dr. Hughes noted the results were "better." (Def's Ex. 4).

Plaintiff has been medically classified as "M-2," a designation applied by medical personnel in order to restrict an inmate's physical activity if necessary. In Plaintiff's case, the "M-2" designation is a "whole body" limitation, and provides for no prolonged running, stooping, crawling, and no strenuous activity in excess of one hour. Plaintiff is not assigned to a job at the unit. Plaintiff is expected to comply with the "mandatory education" policy of the Arkansas Department of Correction and attend school each day with the goal of obtaining his GED (Def's Ex. 5). Plaintiff believes this requirement exceeds his abilities, because he is unable to concentrate in classes, he becomes easily confused, and has difficulty staying awake because he is unable to sleep well at night. Plaintiff has also been subject to disciplinary measures for not attending classes. He believes his medical restrictions should relieve him of the mandatory education requirement.

## IV.   ANALYSIS

### A.   Medical Care Claim

#### 1.   Exhaustion of Administrative Remedies

As a preliminary matter, the Court concurs with the argument of the Correctional Medical Services Defendants that Plaintiff has failed to exhaust his administrative remedies as to his claims against them. Defendants presented evidence that the appeal of Plaintiff's only fully-exhausted grievance (EA-09-1375) was not complete at the filing of his complaint;

Plaintiff did not contradict this. An inmate must exhaust all available administrative remedies prior to initiating a § 1983 prison conditions suit. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983... until such administrative remedies as are available are exhausted"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies before filing suit in federal court.... If exhaustion was not completed at the time of filing, dismissal is mandatory"). In his testimony Plaintiff acknowledged that this grievance was not fully exhausted until after the instant case had been filed. Accordingly, dismissal on the question of deliberate indifference is mandatory.

### 2. Deliberate Indifference

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 831-32 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). An Eighth Amendment violation occurs only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, "deliberate

indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (*citing Estelle*, 429 U.S. at 103-04).

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see, e.g., Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate).  The objective portion of the deliberate indifference standard requires a showing of verifiable medical evidence that a defendant ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of medical condition present in the case. *See Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (*citing Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997), and *Beyerbach*, 49 F.3d at 1326); *see also O'Neil v. White*, 221 F.3d 1343, 1343 (8th Cir. 2000) (*citing Crowley*, 109 F.3d at 502).

To meet the second requirement, the "subjective" component of an Eighth Amendment claim, the defendant must have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297-303 (1991); *Hudson*, 503 U.S. at 8.  In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-303; *Estelle*, 429 U.S. at 106.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Foulks v. Cole County*, 991 F.2d 454, 456-57 (8th Cir. 1993). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quotation omitted); *see also Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (stating that prisoners "do not have a constitutional right to any particular type of treatment[,]" and "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment").

As required in the prejury hearing, the Court fully credits Plaintiff's testimony. However, upon consideration of that testimony, as well as the medical records presented, the Court concludes that Plaintiff's case is a disagreement with treatment rather than a deliberate indifference to Plaintiff's serious medical needs.

A disagreement in treatment does not establish a constitutional violation. *See Noll v. Petrovky*, 828 F.2d 461, 462 (8th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988) (stating that disagreement between physicians regarding treatment "raises question of medical judgment;

it does not show deliberate indifference"). Defendants "do not violate the Eighth Amendment when in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009)(quoting *Long*, 86 F.3d at 765). Here, the Defendants provided regular medical treatment, including routine blood work, medication, and other conservative measures before implementing the more aggressive radiation treatment. Plaintiff has offered no evidence or argument that a delay in implementing the radiation therapy resulted in harm to him, *see Beyerback v. Sears*, 49 F. 3d 1324, 1326-27 (8th Cir. 1995), other than nonspecific "suffering" that his Graves' disease has caused him. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotation marks and citations omitted). Plaintiff is still undergoing treatment and has been receiving treatment since the disease was diagnosed by doctors at the ADC.

Plaintiff undoubtedly suffers as a result of his condition. However, the evidence clearly shows that medical personnel have treated Plaintiff but that treatment has not relieved Plaintiff of his symptoms as he desires. While Plaintiff understandably desires a "cure" for his disease, as a matter of law this disagreement with the method of treatment or unhappiness with the current result is insufficient to establish an Eighth Amendment violation.

    **B.**    **Mandatory Education Requirement**

Plaintiff has also challenged the actions of ADC officials both in requiring him to attend school and in punishing him for disciplinary infractions when he failed to attend

classes or slept through them. However, nothing in Plaintiff's medical restrictions, or his M-2 classification, would give any reason for the ADC officials to believe that he could not comply with the requirements of the mandatory education program. Based on Plaintiff's own description of the classroom requirements, there is no indication that the school program is not commensurate with Plaintiff's restrictions. In the absence of a showing that the requirements of the educational program exceeded Plaintiff's medical restrictions, the Court finds no deliberate indifference on the part of the ADC Defendants.

## V. CONCLUSION

Accordingly, the undersigned recommends a finding that there are no genuine issues of material fact remaining. Accepting Plaintiff's evidence as true and giving him the benefit of all favorable inferences, Defendants are entitled to dismissal of all the claims against them as a matter of law, without further hearing.

IT IS SO RECOMMENDED this 25th day of March, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE